Filed 3/30/22  P. v. Quintero CA5
Opinion following transfer from Supreme Court

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>MIGUEL ANGEL QUINTERO,<br><br>Defendant and Appellant. | F075807<br><br>(Tulare Super. Ct.<br>No. VCF255016C)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Tulare County.  Gary L. Paden, Judge.

Patricia L. Brisbois, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta and Xavier Becerra, Attorneys General, Lance E. Winters and Gerald A. Engler, Chief Assistant Attorneys General, Michael P. Farrell, Assistant Attorney General, Eric L. Christoffersen and Robert C. Nash, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

Defendant Miguel Angel Quintero and two codefendants, Jesus Castillo and Roberto Estrada, were charged with several crimes in connection with a robbery and shooting at an ATM.  The information charged defendant with attempted murder (count 1; Pen. Code, §§ 664, 187, subd. (a)),[1] carjacking (count 2; § 215, subd. (a)), first degree robbery (count 3; § 211),[2] assault with a firearm (count 4; § 245, subd. (a)(2)), and assault with a deadly weapon (i.e., a knife) (count 5; § 245, subd. (a)(1).)[3]  The information also alleged that all five crimes were committed for the benefit of, at the direction of, and in association with a criminal street gang (§ 186.22, subd. (b)(1)(A)– (C).)  Finally, the information alleged that with respect to counts 1, 2, and 3, a principal (i.e., Jesus Castillo) intentionally discharged a firearm proximately causing great bodily injury[4] to the victim, Jeffrey Gould (referred to in the complaint as "J.G.")[5]  (§ 12022.53, subds. (c)–(e)(1).)

Defendant was tried separately from his two codefendants.  The jury convicted defendant of attempted murder, first degree robbery, assault with a firearm, and assault with a deadly weapon; and found the related enhancements to be true.  The jury acquitted defendant of carjacking.

On count 1, defendant was sentenced to life with the possibility of parole, plus 25 years to life (§ 12022.53, subd. (d)).  On count 3, defendant was sentenced to a concurrent term of four years, plus 25 years to life (§ 12022.53, subd. (d)).  On count 4, defendant was sentenced to a term of three years, plus 10 years for the gang enhancement (§ 186.22, subd. (b)(1)(C).).  On count 5, defendant was sentenced to a term of three

---

[1] All further statutory references are to the Penal Code unless otherwise stated.

[2] See also section 212.5, subdivision (b).

[3] A sixth count charged Roberto Estrada with evasion of an officer.  (Veh. Code, § 2800.2, subd. (a).)

[4] The information says, "[G]reat bodily injury and death."

[5] Several additional enhancements were alleged with respect to the other defendants.

years, plus 10 years for the gang enhancement (§ 186.22, subd. (b)(1)(C).) Defendant's sentences on counts 4 and 5 were stayed pursuant to section 654. Restitution and several other fines and fees were also imposed.

Defendant appealed. In *People v. Quintero* (Oct. 26, 2016, F069749) [nonpub. opn.] (*Quintero I*), this court agreed with defendant's contentions that there was insufficient evidence he knew the two principals were gang members, and that his sentence for robbery should have been stayed under section 654. Accordingly, our opinion had the following disposition:

> "The true findings on the section 186.22, subdivision (b) enhancements and section 12022.53, subdivision (e)(1) enhancements are reversed. The matter is remanded to the trial court for resentencing with directions to stay execution of the sentence on count 3 pursuant to section 654. When a new abstract of judgment is prepared after resentencing, it shall note that defendant was convicted by 'jury' not by 'plea.' The new abstract of judgment shall also reflect that execution of sentence on count 4 was stayed pursuant to section 654. In all other respects the judgment is affirmed." (*Quintero I*, *supra*, at p. 18.)

Pursuant to this disposition, the trial court resentenced defendant on April 19, 2017. The court imposed the following sentence: life with the possibility of parole on count 1; a stayed (§ 654) term of four years on count 3; a stayed (*ibid.*) term of three years on count 4; and a stayed (*ibid.*) term of three years on count 5.

Defendant appealed again. In an opinion filed March 10, 2020, we held that Senate Bill No. 1437 (2017–2018 Reg. Sess.) (Senate Bill 1437) applied retroactively to defendant and reversed his attempted murder conviction. (*People v. Quintero* (Mar. 10, 2020, F075807) [nonpub. opn.] (*Quintero II*).) The Supreme Court granted review of *Quintero II* and directed us to vacate that opinion and reconsider in light of Senate Bill No. 775 (2020–2021 Reg. Sess.) (Stats. 2021, ch. 551) (Senate Bill 775). Among other changes, Senate Bill 775 amended section 1170.95 to read, in part: "A person convicted of murder, attempted murder, or manslaughter whose conviction is not final may

3

challenge on direct appeal the validity of that conviction based on the changes made to Sections 188 and 189 by Senate Bill 1437 (Chapter 1015 of the Statutes of 2018)." (§ 1170.95, subd. (g).) We again reverse defendant's attempted murder conviction, which may be retried on remand.

## FACTS[6]

At about 5:00 a.m., on July 12, 2011, Jeffrey Gould (Gould) pulled up to an ATM in Exeter. He exited his Mazda and approached the ATM, having left the car running and its door open. He withdrew $700 for rent. Gould's mother, with whom he lived, called and told him to withdraw another $220. However, the ATM indicated the account had insufficient funds for the additional $220.

There was an older man behind him, so Gould let him use the ATM. As the man used the ATM, Gould went to his car and continued to speak with his mother on the phone. After the man was done using the ATM, Gould again attempted to withdraw additional funds but could not, due to insufficient funds. The ATM printed a receipt, which fell to the ground. Gould picked it up and looked at it. That is when two men came up to him. One of the men was wearing a hat and holding a knife with a blade about four inches in length. The knife-wielding assailant said, " 'Give me your shit, Holmes.' " Gould replied, " 'F[**]k you.' " The knife-wielding assailant then hit Gould with his hand. The two "scuffled around" until the other assailant shot Gould. The bullet broke two of Gould's ribs, injured his lung and necessitated removal of his spleen.

Defendant eventually admitted to law enforcement that he dropped off his cousin Jesus Castillo and his friend "Huesitos" at the bank parking lot near 5:00 a.m. Castillo and Huesitos got out and were running "kind of towards the bank." Defendant knew Castillo and Huesitos were going to rob someone but did not know they would shoot

---

[6] Both parties rely on the statement of facts from this court's opinion in *Quintero I*. We do the same.

anyone. Defendant waited down the road. When Castillo and Huesitos returned, they said they had shot the victim because he was bigger than they were, and he was "coming at them."

## DISCUSSION

**I. Defendant Must be Given the Benefits of Senate Bill 1437 Retroactively**

**A.** *Law*

Senate Bill 1437 became effective January 1, 2019. (*People v. Gutierrez-Salazar* (2019) 38 Cal.App.5th 411, 413.) "Senate Bill 1437 was enacted to "amend the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, § 1, subd. (f).) "Substantively, Senate Bill 1437 accomplishes this by amending section 188, which defines malice, and section 189, which defines the degrees of murder, and as now amended, addresses felony murder liability." (*People v. Martinez* (2019) 31 Cal.App.5th 719, 723.)

As amended, section 188 now provides: "Except as stated in subdivision (e) of Section 189, in order to be convicted of murder, a principal in a crime shall act with malice aforethought. Malice shall not be imputed to a person based solely on his or her participation in a crime." (§ 188, subd. (a)(3).)

Senate Bill No. 1437 also created a procedure for certain murder convicts to petition to vacate their murder conviction and be resentenced. (See § 1170.95.) One of the requirements for such a petition is that the petitioner would not have been convicted under the new law of malice established by Senate Bill No. 1437. (See § 1170.95, subd. (a)(3).)

Through recently enacted Senate Bill No. 775, the Legislature has now clarified "that persons who were convicted of attempted murder or manslaughter under a theory of felony murder and the natural probable consequences doctrine are permitted the same relief as those persons convicted of murder under the same theories." (Senate Bill No. 775 (2020-2021 Reg. Sess.) ch. 551, § 1(a); see also § 1170.95, subd. (a).)

Additionally, "[a] person convicted of … attempted murder… whose conviction is not final may challenge on direct appeal the validity of that conviction based on the changes made to Sections 188 and 189 by Senate Bill 1437 …." (§ 1170.95, subd. (g).)

### B. *Analysis*

The Attorney General concedes that defendant's attempted murder conviction must be reversed. Because multiple theories of that crime were presented to the jury – including the now invalid theory based on the natural and probable consequences doctrine – and we cannot say beyond a reasonable doubt that the jury did not rely on the invalid theory, we must accept the concession and reverse.[7] (See *People v. Aledamat* (2019) 8 Cal.5th 1, 13, [*Chapman* harmless error analysis applies to valid/invalid theory cases].) The prosecution may retry defendant on remand. (See *In re D.N.* (2018) 19 Cal.App.5th 898, 902 ["Where the prosecution makes its case under the law as it stood at trial, double jeopardy is not implicated as it would otherwise be where there is evidentiary insufficiency"].)

### DISPOSITION

Defendant's conviction for attempted premeditated murder is reversed. The People may elect to retry defendant on the attempted murder count. If the People elect to retry the attempted murder count, they shall notify defendant of that fact within 30 days of the filing of the remittitur and proceed with the prosecution in the time permitted by

---

[7] Defendant's claim of instructional error with respect to attempted murder is mooted by our reversal of that conviction and the changes made by Senate Bills 1437 and 775.

6

law.  If the People do not elect to retry the attempted murder count, defendant shall be resentenced.  In all other respects, the judgment is affirmed.

POOCHIGIAN, Acting P. J.

WE CONCUR:

SMITH, J.

SNAUFFER, J.

7